U.S. Bankruptcy Court

**Eastern District of Pennsylvania**

Notice of Electronic Claims Filing

The following transaction was received from NICHOLAS, BRIAN on 10/26/2023 at 10:15 AM EST

File another claim

| | |
|---|---|
| **Case Name:** | Shawn Michael Leonard |
| **Case Number:** | 23-12700-amc |
| **Creditor Name:** | PennyMac Loan Services, LLC.<br>P.O. Box 2410<br>Moorpark, CA 93020 |
| **Claim Number:** | 8    Claims Register |
| **Amount Claimed:** | $288,608.57 |
| **Amount Secured:** | $288608.57 |
| **Amount Priority:** | |

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Leonard 23-12700 POC1.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=10/26/2023] [FileNumber=31615017
-0] [211efa9a6b47aeb11d06f6babfb8a2971005d93d83f46ccc59d6db742b4b8a7a1
49dd55cf587e8616c804741812b37b6cb519c3059ce4ca192bee93b56630ca0]]
**Document description:**Exhibit 410a
**Original filename:**C:\fakepath\Leonard 23-12700 POC 410a.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=10/26/2023] [FileNumber=31615017
-1] [4b369dc79ade2b767328db2caa1a9bee7fcc10767429c2664ed8b3414dbc347de
3a3ea51e0b9613856e0b3a24a65a57a8c814e2a1217a982647b58ece3313069]]
**Document description:**Service List
**Original filename:**C:\fakepath\Leonard 23-12700 POC cos.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=10/26/2023] [FileNumber=31615017
-2] [56fa560328b54743368f099a4c424d40f4422a195f1e91ce81b3d09067e177b98
6ce76f79f5e98e0505500326243702e58a5cf6ba02a72c59336085697792f3f]]
**Document description:**Exhibit escrow
**Original filename:**C:\fakepath\Leonard 23-12700 POC ea.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=10/26/2023] [FileNumber=31615017
-3] [3ed931b781fd3e0cd68c2f4ecece4f5dd2f9503d75e2d1bf1286cc8dc95cb3c6f
a6a806dc6a49a4f6940addf5aaa2c5ca2c37d1a912439d89fa3708cfe7c014a]]
**Document description:**Exhibit loan docs
**Original filename:**C:\fakepath\Leonard 23-12700 POC loan docs.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=10/26/2023] [FileNumber=31615017
-4] [7ea7a30973aff83537d3654573e7f3eadc7635f2f6b1e1ad5dec9f735f7b901ac
1d31408ed5ddcdc179d38f4914b4608fe61e5aa8edb3911b4d6753891438b40]]

**23-12700-amc Notice will be electronically mailed to:**

MARK A. CRONIN on behalf of Creditor PENNYMAC LOAN SERVICES, LLC
bkgroup@kmllawgroup.com

JOSEPH L QUINN on behalf of Debtor Shawn Michael Leonard
CourtNotices@rqplaw.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

KENNETH E. WEST on behalf of Trustee KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

**23-12700-amc Notice will not be electronically mailed to:**

**Fill in this information to identify the case:**

Debtor 1    Shawn Michael Leonard a/k/a Shawn Michael Mark Leonard
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of Pennsylvania

Case number   23-12700 AMC

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. **Who is the current creditor?** | **PENNYMAC LOAN SERVICES, LLC** | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |
| 2. **Has this claim been acquired from someone else?** | ☒ No | |
| | ☐ Yes.  From whom? _____ | |
| 3. **Where should notices and payments to the creditor be sent?** | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **PennyMac Loan Services, LLC.** | **PennyMac Loan Services, LLC.** |
| | Name | Name |
| | **P.O. Box 2410** | **P.O. Box 660929** |
| | Number        Street | Number        Street |
| | **Moorpark, CA 93020** | **Dallas, TX 75266-0929** |
| | City        State        Zip Code | City        State        Zip Code |
| | **866-629-4570** | **866-629-4570** |
| | Contact phone | Contact phone |
| | **BK@pnmac.com** | **BK@pnmac.com** |
| | Contact Email | Contact Email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |
| 4. **Does this claim amend one already filed?** | ☒ No | |
| | ☐ Yes.  Claim number on court claims registry (if known)_____    Filed on _____ | |
| | | MM  /  DD  /  YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No | |
| | ☐ Yes.  Who made the earlier filing? _____ | |

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor    **4653** |

7. **How much is this claim?**   **$288,608.57**

Does this amount include interest or other charges?

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

9. **Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.
   **Nature of property: 854 West Chestnut Street Coatesville, PA 19320**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection:   **Recorded Mortgage**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____

Amount of the claim that is secured: **$288,608.57**

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: **$3,700.68**
Annual Interest Rate (when case was filed) **3.8750%**

☒ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

242

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   __10/25/2023__
                    MM / DD / YYYY

__/s/ Brian C. Nicholas Esquire Attorney ID# 317240__
Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | __Brian C. Nicholas__ | | |
| | First name | Middle name | Last name |
| Title | __Bankruptcy Attorney__ | | |
| Company | __KML Law Group, P.C.__ | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | __701 Market Street, Suite 5000__ | | |
| | Number          Street | | |
| | __Philadelphia__ | __PA__ | __19106__ |
| | City | State | ZIP Code |
| Contact phone | __201-549-5366__ | Email | __bnicholas@kmllawgroup.com__ |

| Part 1:  Mortgage and Case Information | | Part 2:  Total Debt Calculation | | Part 3:  Arrearage As Of Date Of Petition | | Part 4:  Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-12700 AMC | Principal Balance | $287,745.51 | Principal & Interest | $1,518.44 | Principal & Interest | $1,518.44 |
| Debtor 1 | Shawn Michael Leonard a/k/a Shawn Michael Mark Leonard | Interest Due | $1,191.38 | Pre-petition Fees Due | $0.00 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $0.00 | Monthly Escrow | $836.82 |
| Last 4 Digits to Identify | 4653 | Fees / Costs Due | $0.00 | Projected Escrow Shortage | $2,182.24 | | |
| Creditor | PENNYMAC LOAN SERVICES, LLC | Escrow Def for Funds Advanced | $0.00 | | | Mortgage Insurance | $188.87 |
| Servicer | PENNYMAC LOAN SERVICES, LLC | Less Total Funds on Hand | $328.32 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $288,608.57 | Total Prepetition Arrears | $3,700.68 | Total Monthly Payment | $2,544.13 |

| PART 5:  Loan Payment History From First Date of Default | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | +/- | from the list | | calculated | + | + | +/- | +/- | +/- | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| | | | | | | 0.00 | | | | | | | | 0.00 | 0.00 | 0.00 |
| 9/1/2023 | 2,621.72 | | | Monthly Payment Due | 9/1/2023 | 2,621.72 | | | | | | 287,745.51 | | 328.32 | 0.00 | 0.00 |
| 9/8/2023 | | | | Current BK Filed | 9/1/2023 | 2,621.72 | | | | | | 287,745.51 | | 328.32 | 0.00 | 0.00 |


**PENNYMAC**™

**Escrow Account Disclosure Statement**

P.O. BOX 514387
LOS ANGELES, CA 90051 4387

**Statement Date:** September 15, 2023

**Property Address:**
854 W CHESTNUT ST
COATESVILLE PA 19320

SHAWN  LEONARD
DOLLY  LEONARD
854 W CHESTNUT ST
COATESVILLE, PA 19320-5827

📩 **Questions?** Visit our website @
**www.PennyMac.com**
(800) 777 - 4001 (Se Habla Español)
M - F: 5:00 AM - 6:00 PM PT
Sat: 7:00 AM - 11:00 AM PT

## Annual Escrow Account Review

At least once each year, PennyMac Loan Services, LLC ("PennyMac") reviews your escrow account to make sure there is enough money to pay your property taxes and/or insurance premiums. This statement informs you of any adjustments to your monthly payment, shows you how much money you currently have in your escrow account and how much you will need in the next 12 months.

## Your New Mortgage Payment

During the next year, we expect your escrow account balance to have enough money to pay your taxes and/or insurance payments as they come due.

| Description | Current Monthly Payment Amount | New Monthly Payment Amount |
|---|---|---|
| Principal and Interest | $1,518.44 | $1,518.44 |
| Escrow Payment | $1,017.03 | $1,025.69 |
| Escrow Reserve Payment | $86.25 | $0.00 |
| Total Payment Amount | $2,621.72 | $2,544.13 |

Please start making the 'New Monthly Payment Amount' on October 1, 2023.  Payments due prior to this date should be made at the 'Current Monthly Payment Amount' shown.

## Projected Escrow Account Activity

Over the next year, PennyMac expects to pay $12,308.38 from your escrow account. Your new monthly escrow payment is $1,025.69.

| Escrow Item Description | Annual Amount | | Monthly Amount |
|---|---|---|---|
| City Tax: | $659.33 | | |
| County Tax: | $789.64 | | |
| Hazard Ins: | $1,658.72 | | |
| Mortgage Insurance: | $2,266.44 | | |
| School Tax: | $6,934.25 | | |
| Total Payments from Escrow: | $12,308.38 | ÷ 12 = | $1,025.69 |

## Projected Escrow Account Activity (Continued)

Below is a projection of escrow account activity from October 01, 2023 through September 30, 2024. These amounts may change when the actual payments become due.

| Month | Escrow Deposit(s) | Tax Payment(s) | Insurance Payment(s) | Mortgage Insurance Payment(s) | Projected Balance |
|---|---|---|---|---|---|
| Beginning Escrow Balance | | | | | $2,510.56 |
| Oct 2023 | $1,025.69 | $0.00 | $0.00 | $188.87 | $3,347.38 |
| Nov 2023 | $1,025.69 | $0.00 | $0.00 | $188.87 | $4,184.20 |
| Dec 2023 | $1,025.69 | $0.00 | $0.00 | $188.87 | $5,021.02 |
| Jan 2024 | $1,025.69 | $0.00 | $1,658.72 | $188.87 | $4,199.12 |
| Feb 2024 | $1,025.69 | $0.00 | $0.00 | $188.87 | $5,035.94 |
| Mar 2024 | $1,025.69 | $1,448.97 | $0.00 | $188.87 | $4,423.79 |
| Apr 2024 | $1,025.69 | $0.00 | $0.00 | $188.87 | $5,260.61 |
| May 2024 | $1,025.69 | $0.00 | $0.00 | $188.87 | $6,097.43 |
| Jun 2024 | $1,025.69 | $0.00 | $0.00 | $188.87 | $6,934.25 |
| Jul 2024 | $1,025.69 | $0.00 | $0.00 | $188.87 | $7,771.07 |
| Aug 2024 | $1,025.69 | $6,934.25 | $0.00 | $188.87 | $1,673.64 [1] |
| Sep 2024 | $1,025.69 | $0.00 | $0.00 | $188.87 | $2,510.46 |
| Ending Escrow Balance | | | | | $2,510.46 |
| Totals | $12,308.28 | $8,383.22 | $1,658.72 | $2,266.44 | |

[1] Lowest projected balance.

## Your Escrow Balance

Based on the projected activity above, our review shows that your escrow balance has enough funds to pay your taxes and/or insurance as they come due.

| | |
|---|---|
| Lowest Projected Balance | $1,673.64 |
| Minimum Required Balance | $1,673.64 |

PennyMac requires a minimum balance up to one-sixth of the estimated total annual payments from your escrow account, unless state law or your mortgage contract requires less to help cover any unexpected increase in taxes and/or insurance. The minimum required balance does not include mortgage insurance.

## Escrow Account History

The following is the statement of activity in your escrow account from September 01, 2023 through September 30, 2023.

Last year, we anticipated that payments from your account would be made during this period equaling $188.87. Your lowest monthly balance should not have exceeded $1,656.31, or 1/6 of anticipated payments from the account, unless your mortgage contract or state law specifies a lower amount.

The table below shows the Projected and Actual account history for the previous escrow account period.

| | Payments | | Disbursements | | | | Escrow Balance | |
|---|---|---|---|---|---|---|---|---|
| Month | Projected | Actual | Projected | Description | Actual | Description | Projected | Actual |
| Beginning Escrow Balance | | | | | | | $621.21 | $328.32 |
| Sep 2023 | $1,017.03 | $2,182.24 *E | $188.87 | MIP/PMI | $0.00 * | | $1,449.37 | $2,510.56[2] |
| Ending Escrow Balance | | | | | | | $1,449.37 | $2,510.56 |
| Totals | $1,017.03 | $2,182.24 | $188.87 | | $0.00 | | | |

[2] Lowest actual balance.

An asterisk '*' beside an amount indicates a difference from projected activity, either in the amount or the date.

The letter 'E' beside an amount indicates that the payment has not yet occurred, but is estimated to occur as shown.

At the time of analysis, PennyMac assumes that you will make all scheduled mortgage payments by or before the effective date of your new payment (shown in the Projected Escrow Account Activity section above).

## Other Important Information

| | | | |
|---|---|---|---|
| **How to Contact Us** | 📧 www.PennyMac.com<br>Available 24/7 on all your devices: PC, Tablet, and Mobile.<br>*El sitio web y las declaraciones están disponibles en español.*<br>**Go Paperless today!** | 📞 **PennyMac Customer Service:**<br>(800) 777 4001<br>M  F: 5:00 AM  6:00 PM PT<br>Sat: 7:00 AM  11:00 AM PT<br>**Fax:** (866) 577 7205 | ✉️ PennyMac Loan Services, LLC<br>Attn: Correspondence Unit<br>P.O. Box 514387<br>Los Angeles, CA 90051 4387 |

| | | | |
|---|---|---|---|
| **How to Make a Payment** | **Auto-Pay \*:** Enroll in Auto Pay, on our website, to set up recurring payments from the bank account of your choice.<br>**Pay Online:** Make a one time payment on our website. | **Pay-by-Phone:** (800) 777 4001<br>*(Fees may apply to use this service)*<br>**Western Union:**<br>Code City: *PennyMac*<br>Pay To: *PennyMac Loan Services*<br>Code State: *CA*<br>ID Number: *Enter Loan Number* | **Check \*\*:** Mail to PennyMac:<br>**Standard Address:** P.O. Box 660929 Dallas, TX 75266 0929<br>**Overnight Address:**<br>Attn: Lockbox Operations<br>20500 Belshaw Ave.<br>Carson, CA 90746 |

| | | |
|---|---|---|
| **Tax and Insurance Information** | **Property Tax Bills:**<br>If you receive a tax bill, you do not need to take any action. (**Please note:** Supplemental/ Additional tax bills are the responsibility of the homeowner; PennyMac will pay them from the escrow account upon request.) | **General Insurance Questions:** (866) 318 0208<br>**Insurance Information:** Any time there is a change to your insurance policy please provide your insurance carrier the following information:<br>**Mortgagee Clause:**<br>PennyMac Loan Services, LLC<br>Its Successors and/or Assigns<br>P.O. Box 6618<br>Springfield, OH 45501 6618 |

| | |
|---|---|
| **Credit Reporting Information** | We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. |

| | |
|---|---|
| **Important Consumer Information** | This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose. However, if your account is subject to pending bankruptcy proceedings or if you have received a discharge in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt against you personally. |

**Requests for prior payment adjustments:** To request funds for a prior payment be applied differently, you **must** notify PennyMac within 90 days of the original transaction. After 90 days, we will only change the application of funds if the transaction was applied contrary to your documented instructions.

*\* If you are enrolled in a PennyMac Auto Pay program, and received a payment change notification, the new payment amount will be drafted on your scheduled draft date. (The principal curtailment amount will not change.) If you pay via online bill payment, please update the payment amount with your financial institution to ensure timely processing of your payment.*

*\*\* When you pay with a check, you authorize PennyMac either to use information from your check to make a one time electronic fund transfer (EFT) from your account, or to process the payment as a check transaction. When we use information from your check to make an EFT, funds may be withdrawn from your account on the same day PennyMac receives your payment. Please note that your financial institution will not send back your check. If funds are returned unpaid, a return service charge may be assessed to your loan whether processing your payment as a check or an EFT, as allowed by applicable law.*

In accordance with the Fair Debt Collection Practices Act, 15 U.S.C. section 1692 et seq., debt collectors are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: (i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass.

**NEW YORK**   If a creditor or debt collector receives a money judgment against you in court, state and federal laws prevent the following types of income from being taken to pay the debt: 1) Supplemental security income (SSI); 2) Social security; 3) Public assistance (welfare); 4) Spousal support, maintenance (alimony) or child support; 5) Unemployment benefits; 6) Disability benefits; 7) Workers' compensation benefits; 8) Public or private pensions; 9) Veterans' benefits; 10) Federal student loans, federal student grants, and federal work study funds; and 11) Ninety percent of your wages or salary earned in the last sixty days. PennyMac Loan Services, LLC is registered with the Superintendent of the New York State Department of Financial Services (Department). You may obtain further information or file a complaint by calling the Department's Consumer Assistance Unit at 1 800 342 3736 or by visiting www.dfs.ny.gov.

**NORTH CAROLINA**    Licensed by the North Carolina Office of the Commissioner of Banks. Complaints regarding the servicing of your mortgage may be submitted to the Office of the Commissioner of Banks, 316 W. Edenton Street, Raleigh, NC 27603, (919) 733 3016. Licensed by the North Carolina Department of Insurance. Permit No. 119504607   6101 Condor Dr., Suite 200, Moorpark, CA 93021. Permit No. 119505929   14800 Trinity Blvd., Fort Worth, TX 76155. Permit No. 119506567   3043 Townsgate Rd., Suite 200, Westlake Village, CA 91361. Permit No. 119506570   2201 West Plano Parkway, Suites 150 and 300, Plano, TX 75075. Permit No. 119507419   10550 West Charleston Blvd., Suite A, Las Vegas, NV 89135.

**OREGON**    Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at (800) 777-4001. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

Equal Housing Opportunity © 2008 2023 PennyMac Loan Services, LLC, 3043 Townsgate Rd, Suite 200, Westlake Village, CA 91361, 818 224 7442. NMLS ID # 35953 (www.nmlsconsumeraccess.org). Trade/service marks are the property of PennyMac Loan Services, LLC and/or its subsidiaries or affiliates. Arizona Mortgage Banker License # 0911088. Licensed by the Department of Financial Protection and Innovation under the California Residential Mortgage Lending Act. Colorado: Colorado office: 5500 South Quebec Street, Suite 260, Greenwood Village, Colorado 80111, (877) 215 2552. Massachusetts Mortgage Lender License # MC35953. Minnesota: This is not an offer to enter into an agreement and an offer may only be made pursuant to Minn. Stat. §47.206 (3) & (4). Licensed by the N.J. Department of Banking and Insurance. Licensed Mortgage Banker NYS Department of Financial Services. Rhode Island Lender License # 20092600LL. For more information, please visit PENNYMAC.COM/state licenses. Co op Loans not available. Some products may not be available in all states. Information, rates and pricing are subject to change without prior notice at the sole discretion of PennyMac Loan Services, LLC. All loan programs subject to borrowers meeting appropriate underwriting conditions. This is not a commitment to lend. Other restrictions apply. All rights reserved. (01 2023)

# NOTE

| | | |
|---|---|---|
| **January 25, 2018** | **CANONSBURG,** | **Pennsylvania** |
| [Date] | [City] | [State] |

**854 West Chestnut Street, Coatesville, PA 19320**
**[Property Address]**

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$322,910.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **NVR Mortgage Finance, Inc. NMLS# 1127, a Corporation.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.875 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **March 1, 2018.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on **February 1, 2048,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay these amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at **P.O. Box 645101**
**Cincinnati, OH 45264-5101**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$1,518.44.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**PENNSYLVANIA FIXED RATE NOTE** – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    **3239 2/16**
Modified for FHA 5/16
Ellie Mae, Inc.

Page 1 of 3

FHA3200PANT   0516
FHA3200NOT (CLS)
01/25/2018 06:12 AM PST

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. EFFECT OF SURVIVAL EVENTS

For purposes of this Note, "Survival Event" is defined as follows:
(a) any default described in Section 6(B) of this Note;
(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;
(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;
(d) the Maturity Date as defined in this Note;
(e) the entry of any judgment against me under this Note; and
(f) the entry of any judgment under the Security Instrument.

**PENNSYLVANIA FIXED RATE NOTE** – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    3239 2/16
Modified for FHA 5/16
Ellie Mae, Inc.

FHA3200PANT  0516
FHA3200NOT (CLS)
01/25/2018 06:12 AM PST

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**SHAWN LEONARD**

_____ (Seal)
**DOLLY LEONARD**

**Lender:** NVR Mortgage Finance, Inc. NMLS# 1127
**NMLS ID**
**Loan Or** ▓ **offrey Michael Fritz**
**NMLS ID**

PAY TO THE ORDER OF:  PennyMac Corp
**WITHOUT RECOURSE**
NVR Mortgage Finance, Inc. NMLS# 1127

BY: _____

Jared Kelley
TITLE: _____
Assistant Secretary

**[Sign Original Only]**

**ALLONGE TO NOTE**

PROPERTY ADDRESS: 854 WEST CHESTNUT STREET, COATESVILLE, PA 19320

PRINCIPAL BALANCE: $322910

BORROWER: SHAWN LEONARD

CO-BORROWER: DOLLY LEONARD

PAY TO THE ORDER OF:  PennyMac Loan Services, LLC

WITHOUT RECOURSE: PennyMac Corp.

BY _____

TITLE: Kateryna Kolysnichenko, Authorized Representative

**ALLONGE TO NOTE**

PROPERTY ADDRESS: 854 WEST CHESTNUT STREET, COATESVILLE, PA 19320

PRINCIPAL BALANCE: $322910

BORROWER: SHAWN LEONARD

CO-BORROWER: DOLLY LEONARD

PAY TO THE ORDER OF:

WITHOUT RECOURSE: PennyMac Loan Services, LLC

BY _____

TITLE: Kateryna Kolysnichenko, Authorized Representative

Rec Fees: $181.75   State: $0.00
Rick Loughery Recorder of Deeds, Chester County, PA



**When recorded, return to:**
**NVR Mortgage Finance, Inc.**
**Attn: Final Document Department**
**555 Southpointe Boulevard, Suite 300**
**Canonsburg, PA 15317**
**1-800-926-3600**

**This document was prepared by:**
**Gregg Vargo**
**NVR Mortgage Finance, Inc.**
**980 Harvest Drive Suite 350**
**Blue Bell, PA 19422**
**412-250-4020**



This Line For Recordin 

# MORTGAGE

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are
defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words
used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated
**January 25, 2018,**          together with all Riders to this document.

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                          Page 1 of 22                    PAEFHA15DL   0716
                                                                         PAEDEDL (CLS)
                                                                         01/25/2018 08:12 AM PST



**(B) "Borrower"** is   **SHAWN LEONARD AND DOLLY LE**
**UNMARRIED.**

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate
corporation that is acting solely as a nominee for Lender and Lender's successors and
assigns. MERS is the mortgagee under this Security Instrument. MERS is organized
and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026,
Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville,
IL 61834. The MERS telephone number is (888) 679-MERS.
**(D) "Lender"** is   **NVR Mortgage Finance, Inc..**

Lender is   **a Corporation,**                                          organized and existing
under the laws of **Virginia.**
Lender's address is **555 Southpointe Boulevard, Canonsburg, PA 15317.**

**(E) "Note"** means the promissory note signed by Borrower and dated
**January 25, 2018.**            The Note states that Borrower owes Lender **THREE
HUNDRED TWENTY TWO THOUSAND NINE HUNDRED TEN AND NO/100\* \* \* \* \***
**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*** Dollars (U.S. **$322,910.00**       )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and
to pay the debt in full not later than **February 1, 2048.**
**(F) "Property"** means the property that is described below under the heading "Transfer
of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider   ☐ Condominium Rider   ☒ Planned Unit Development Rider
☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, ▆▆▆▆▆▆▆▆▆▆▆▆ regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

covenants and agreements under this Security Instrument and the Note. For this pur-
pose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee
for Lender and Lender's successors and assigns) and to the successors and assigns of
MERS, with power of sale, the following described property located in the
**County**                          of   **Chester**
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
AS "EXHIBIT A".**

which currently has the address of    **854 West Chestnut Street, Coatesville,**

[Street] [City]

**Pennsylvania 19320**                ("Property Address"):
          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property,
and all easements, appurtenances, and fixtures now or hereafter a part of the property.
All replacements and additions shall also be covered by this Security Instrument. All of
the foregoing is referred to in this Security Instrument as the "Property." Borrower under-
stands and agrees that MERS holds only legal title to the interests granted by Borrower
in this Security Instrument, but, if necessary to comply with law or custom, MERS (as
nominee for Lender and Lender's successors and assigns) has the right: to exercise any
or all of those interests, including, but not limited to, the right to foreclose and sell the
Property; and to take any action required of Lender including, but not limited to, releasing
and canceling this Security Instrument.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                          Page 4 of 22                    PAEFHA15DL  0716
                                                                        PAEDEDL (CLS)
                                                                 01/25/2018 06:12 AM PST

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 5 of 22                        PAEFHA15DL   0716
                                                                                       PAEDEDL (CLS)
                                                                                       01/25/2018 06:12 AM PST



**2. Application of Payments or Proceeds.** Except as ~~otherwise described in this~~ Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any

or all Escrow Items at any time by a notice given in accordance █████████████████
such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are
then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit
Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the
maximum amount a lender can require under RESPA. Lender shall estimate the amount
of Funds due on the basis of current data and reasonable estimates of expenditures of
future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal
agency, instrumentality, or entity (including Lender, if Lender is an institution whose
deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the
Funds to pay the Escrow Items no later than the time specified under RESPA. Lender
shall not charge Borrower for holding and applying the Funds, annually analyzing the
escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest
on the Funds and Applicable Law permits Lender to make such a charge. Unless an
agreement is made in writing or Applicable Law requires interest to be paid on the
Funds, Lender shall not be required to pay Borrower any interest or earnings on the
Funds. Borrower and Lender can agree in writing, however, that interest shall be paid
on the Funds. Lender shall give to Borrower, without charge, an annual accounting of
the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall
account to Borrower for the excess funds in accordance with RESPA. If there is a short-
age of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as
required by RESPA, and Borrower shall pay to Lender the amount necessary to make
up the shortage in accordance with RESPA, but in no more than 12 monthly payments.
If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall
notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount
necessary to make up the deficiency in accordance with RESPA, but in no more than
12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall
promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines,
and impositions attributable to the Property which can attain priority over this Security
Instrument, leasehold payments or ground rents on the Property, if any, and Community
Association Dues, Fees, and Assessments, if any. To the extent that these items are
Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security
Instrument unless Borrower: (a) agrees in writing to the payment of the obligation



secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.



**6. Occupancy.** Borrower shall occupy, establish, and use ▮▮▮▮▮▮▮▮▮▮▮▮
principal residence within 60 days after the execution of this Security Instrument and shall
continue to occupy the Property as Borrower's principal residence for at least one year
after the date of occupancy, unless Lender determines that this requirement shall cause
undue hardship for the Borrower or unless extenuating circumstances exist which are
beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Bor-
rower shall not destroy, damage or impair the Property, allow the Property to deteriorate
or commit waste on the Property. Borrower shall maintain the Property in order to prevent
the Property from deteriorating or decreasing in value due to its condition. Unless it is
determined pursuant to Section 5 that repair or restoration is not economically feasible,
Borrower shall promptly repair the Property if damaged to avoid further deterioration or
damage. If insurance or condemnation proceeds are paid in connection with damage to
the Property, Borrower shall be responsible for repairing or restoring the Property only if
Lender has released proceeds for such purposes. Lender may disburse proceeds for the
repairs and restoration in a single payment or in a series of progress payments as the
work is completed. If the insurance or condemnation proceeds are not sufficient to repair
or restore the Property, Borrower is not relieved of Borrower's obligation for the completion
of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property,
Lender shall apply such proceeds to the reduction of the indebtedness under the Note
and this Security Instrument, first to any delinquent amounts, and then to payment of
principal. Any application of the proceeds to the principal shall not extend or postpone
the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Prop-
erty. If it has reasonable cause, Lender may inspect the interior of the improvements on
the Property. Lender shall give Borrower notice at the time of or prior to such an interior
inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan
application process, Borrower or any persons or entities acting at the direction of Bor-
rower or with Borrower's knowledge or consent gave materially false, misleading, or
inaccurate information or statements to Lender (or failed to provide Lender with mate-
rial information) in connection with the Loan. Material representations include, but are
not limited to, representations concerning Borrower's occupancy of the Property as
Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security
Instrument.** If (a) Borrower fails to perform the covenants and agreements contained
in this Security Instrument, (b) there is a legal proceeding that might significantly affect



Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay



Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower. .

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of

Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.



If the Loan is subject to a law which sets maximum loan ▉▉▉▉▉▉▉▉▉▉ finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                     Page 15 of 22                                     PAEFHA15DL  0716
PAEDEDL (CLS)
01/25/2018 06:12 AM PST

reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

  (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

  (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

  (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

  (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence; or the purchaser or grantee does so occupy the Property but

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.               Page 17 of 22               PAEFHA15DL  0716
PAEDEDL (CLS)
01/25/2018 06:12 AM PST



his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially



appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

24. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq. ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.**

25. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

26. **Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of

execution, extension of time, exemption from attachment, levy and sale, and home-stead exemption.

**27. Reinstatement Period.** Borrower's time to reinstate provided in Section 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**28. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**29. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) permit the collection and application of miscellaneous proceeds as required by Section 10 of this Security Instrument;

(h) pay the fees required by Section 13 of this Security Instrument;

(i) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(j) pay any collection expenses under Section 24 of this Security Instrument; and

(k) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 17 and 24 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.



**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants** contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**SHAWN LEONARD**                                    1/25/18 (Seal)
                                                      **DATE**

**DOLLY LEONARD**                                    01-25-18 (Seal)
                                                      **DATE**

**Commonwealth of PENNSYLVANIA**
**County of MONTGOMERY**

On this, the _25_ day of _January_, _2018_, before me,
_Francesca L. Centone_, the undersigned officer, personally appeared SHAWN
LEONARD AND DOLLY LEONARD, known to me (or satisfactorily proven) to be the person
whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they
executed the same for the purposes therein contained.
    In witness whereof I hereunto set my hand and official seal.

My commission expires: _July 25, 2020_

                                                      **Title of Officer** Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Francesca L. Centone, Notary Public
Whitpain Twp., Montgomery County
My Commission Expires July 25, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                          Page 21 of 22                    PAEFHA15DL   0716
                                                                         PAEDEDL (CLS)
                                                                         01/25/2018 06:12 AM PST

**Lender: NVR Mortgage Finance, Inc. NMLS# 1127**
**NMLS ID**
**Loan Or**          **eoffrey Michael Fritz**
**NMLS ID**

Certificate of Residence
I,   *Francesca L. Centone*                                              , do hereby certify
that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this _____ 25 _____     day of *January*   2018

_____
Agent of Mortgagee

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                          Page 22 of 22                          PAEFHA15DL   0716
                                                                                PAEDEDL (CLS)
                                                                                01/25/2018 08:12 AM PST



## EXHIBIT "A"

## LEGAL DESCRIPTION

All that certain lot or parcel of ground situate in the Township of Valley, County of Chester, Commonwealth of Pennsylvania, as set forth on Plan entitled, "Overall Subdivision Plan for Oakcrest" recorded with the Recorder of Deeds Office, Chester County, Pennsylvania in Plan Book 17294, page 1.

Having erected thereon a dwelling known as 854 West Chestnut Street, Coatesville, PA 19320.

And Being the same property conveyed to NVR, Inc., a Virginia Corporation by Deed recorded in Deed Book 9628 page 1383 in the Office of the Recorder of Deeds Chester County, Pennsylvania.



# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **25th** day of **January, 2018,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **NVR Mortgage Finance, Inc. NMLS# 1127, a Corporation**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
**854 West Chestnut Street**
**Coatesville, PA 19320.**

The Property Address is a part of a planned unit development ("PUD") known as **OAKCREST**

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**FHA Multistate PUD Rider - 9/2014**
Ellie Mae, Inc.

Page 1 of 3

FHA15PUDRL  0815
P8700PUU (CLS)
01/25/2018 06:12 AM PST



A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then:

(i) Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and

(ii) Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FHA Multistate PUD Rider - 9/2014
Ellie Mae, Inc.                                Page 2 of 3                                FHA15PUDRL  0815
                                                                                        P8700PUU (CLS)
                                                                                  01/25/2018 06:12 AM PST

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

**SHAWN LEONARD**

$1/25/16$  (Seal)
**DATE**

**DOLLY LEONARD**

$01-85-18$  (Seal)
**DATE**

FHA Multistate PUD Rider - 9/2014
Ellie Mae, Inc.

Page 3 of 3

FHA15PUDRL  0815
P8700PUU (CLS)
01/25/2018 06:12 AM PST

13953197E-1119165J ASM
03/2029 08:43:20 AM Page 1 of 2
Rec Fees: $60.00    State: $0.00
Diane O'Dwyer Acting Recorder of Deeds, Chester County, PA

**Prepared By:**
**Jennifer Zak/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**



**ACTING RECORDER OF DEEDS**

When Recorded Return To:
PennyMac Loan Services, LLC
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

✔

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR NVR MORTGAGE FINANCE, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all liens, and any rights due or to become due thereon to **PENNYMAC LOAN SERVICES, LLC, WHOSE ADDRESS IS 3043 TOWNSGATE ROAD STE 200, WESTLAKE VILLAGE, CA 91361 (800)777-4001, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 01/25/2018, in the amount of $322,910.00 made by **SHAWN LEONARD AND DOLLY LEONARD** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR NVR MORTGAGE FINANCE, INC., ITS SUCCESSORS AND ASSIGNS** recorded on 01/26/2018, in the Office of the Recorder of Deeds of **CHESTER** County, in the State of **Pennsylvania**, in **Book 9689 and Page 2137**.

Property is more commonly known as: 854 WEST CHESTNUT STREET, COATESVILLE, PA 19320.

**Dated this 02nd day of October in the year 2023**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR NVR MORTGAGE FINANCE, INC., ITS SUCCESSORS AND ASSIGNS**

By:    *Tracy Rogers*

**TRACY ROGERS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.



STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 02nd day of October in the year 2023, by Tracy Rogers as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS MORTGAGEE, AS NOMINEE FOR NVR MORTGAGE FINANCE, INC., ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

VICKY MCCOY

COMM EXPIRES: 12/18/2026

VICKY MCCOY
Notary Public - State of Florida
Commission # HH 328470
My Comm. Expires Dec 18, 2026
Bonded through National Notary Assn.

Assignment of Mortgage from:
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS MORTGAGEE, AS NOMINEE FOR NVR MORTGAGE FINANCE, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)**
to:
**PENNYMAC LOAN SERVICES, LLC, WHOSE ADDRESS IS 3043 TOWNSGATE ROAD STE 200, WESTLAKE VILLAGE, CA 91361 (800)777-4001, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **SHAWN LEONARD AND DOLLY LEONARD**

All that certain lot or piece of ground situated in
Mortgage Premises: 854 WEST CHESTNUT STREET
COATESVILLE, PA 19320
CHESTER
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

**Certificate of Residence**

I, **Tracy Rogers**, do certify that the precise address of the within named Assignee is:
**PENNYMAC LOAN SERVICES, LLC, WHOSE ADDRESS IS 3043 TOWNSGATE ROAD STE 200, WESTLAKE VILLAGE, CA 91361 (800)777-4001, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Tracy Rogers

**TRACY ROGERS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Shawn Michael Leonard a/k/a Shawn Michael Mark Leonard | CHAPTER 13 |
| Debtor(s) | NO. 23-12700 AMC |

CERTIFICATE OF SERVICE

I, the undersigned, attorney for PENNYMAC LOAN SERVICES, LLC do hereby certify that true and correct copies of the foregoing Proof of Claim have been served <u>October 26, 2023</u>, by electronic filing upon those listed below:

<u>Attorney for Debtor(s)</u>
Quinn, Joseph L.
Ross, Quinn & Ploppert, P.C.
192 South Hanover Street, Suite 101
Pottstown, PA 19464

**Bankruptcy Trustee**
Kenneth E. West
Office of the Chapter 13 Standing Trustee (VIA ECF)
1234 Market Street - Suite 1813
Philadelphia, PA 19107

Date: <u>October 26, 2023</u>

<u>**/s/Brian C. Nicholas Esquire**</u>
Brian C. Nicholas Esquire
Attorney I.D. 317240
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
201-549-5366
bnicholas@kmllawgroup.com